IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:25-CV-183-BO-BM

| | |
|---|---|
| DANIEL AGYENIM-BOATENG and JUSTINA AGYENIM-BOATENG, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) |
| T-MOBILE NORTHEAST LLC, | ) ) |
| Defendant. | ) ) |

ORDER

This cause comes before the Court on plaintiffs' motion to remand and defendant's motion to compel arbitration. The appropriate responses and replies have been filed, or the time for doing so has passed, and in this posture the motions are ripe for disposition. For the reasons that follow, the motion to remand is denied and the motion to compel arbitration is granted.

## BACKGROUND

Plaintiffs instituted this action by filing a complaint against defendant in Cumberland County Superior Court. [DE 1-3]. Defendant removed the complaint to this Court on the basis of its diversity jurisdiction. [DE 1]. Defendant is a Delaware limited liability company whose sole member is T-Mobile USA, Inc. [DE 1] ¶ 5. T-Mobile USA, Inc. is a Delaware corporation with a principal place of business in Bellevue, Washington. *Id.* In its notice of removal, defendant relies on plaintiffs' allegation in their complaint that they are a married couple living in Fayetteville, North Carolina in order to establish plaintiffs' citizenship for purposes of diversity jurisdiction. *Id.* ¶ 4. Plaintiffs have moved to remand this action to Cumberland County Superior Court. [DE 4].

In their complaint, plaintiffs allege claims against defendant for breach of implied contract, negligence, and unfair and deceptive trade practices. [DE 1-3]. Plaintiffs' claims arise out of defendant's alleged actions in locking plaintiff Daniel Agyenim-Boateng's cell phone and causing the loss of crucial business and personal data. *Id.* Defendant has filed a motion to compel arbitration based upon defendant's terms and conditions. [DE 6]; [DE 7]. Plaintiffs oppose the motion to compel arbitration.

## DISCUSSION

As it concerns the Court's subject matter jurisdiction, the Court considers first plaintiffs' motion to remand.[1] Upon removal of a state action to federal court, "[t]he burden of establishing federal jurisdiction is placed upon the party seeking removal." *Mulcahey v. Columbia Organic Chemicals Co.*, 29 F.3d 148, 151 (4th Cir. 1994) (citing *Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92 (1921)). "[A]ny civil action brought in State court of which the district courts of the United States have original Jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). This Court has "original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States," 28 U.S.C. § 1332(a)(1). Removal jurisdiction must be construed strictly in light of federalism concerns, and if jurisdiction in the federal district court is determined to be doubtful, remand is required. *Mulcahey*, 29 F.3d at 151.

In their motion to remand, plaintiffs argue that complete diversity does not exist because plaintiff Justina Agyenim-Boateng remains a legal resident and citizen of the State of Washington. In support, plaintiffs filed a copy of Ms. Agyenim-Boateng's Washington driver's license and a

---

[1] For good cause shown, defendant's motion to file a sur-reply as to the motion to remand [DE 22] is GRANTED and the Court has considered the sur-reply.

2

photograph of a motor vehicle with a Washington license plate. [DE 4-3]; [DE 4-4]. Attached to their reply in support of their motion to remand, plaintiffs have attached the declaration of Ms. Agyenim-Boateng, in which she states that she is living in North Carolina only temporarily, that she intends to return to Washington after she is finished with family obligations in North Carolina, and that she affirms that Washington is her permanent and primary residence. [DE 19-1] ¶¶ 3, 6.

Citizenship for purposes of diversity jurisdiction is synonymous with a person's domicile, and a person's domicile is generally "an individual's place of residence where he intends to remain permanently or indefinitely and to which he intends to return whenever he is away." *Hollowell v. Hux*, 229 F. Supp. 50, 52 (E.D.N.C. 1964). Each person has only one domicile at any given time, and a change in domicile can be effected at any time. *Id.* "Domicile of choice is entirely a question of residence and intention, or, as it is frequently put, of factum and animus." *Id.* at 52-53 (quoting 28 C.J.S. Domicile § 9). "Domicile requires physical presence, coupled with an intent to make the State a home." *Johnson v. Advance Am.*, 549 F.3d 932, 937 n.2 (4th Cir. 2008); *see also Gorriceta v. Silverman*, No. 24-CV-002025-LKG, 2025 WL 1530040, at *4 (D. Md. May 29, 2025) ("Even when there is a change in residence, the previous domicile remains until there is an intent to create a new home.").

To determine a person's domicile, a court may consider factors such as current residence, location of personal and real property, voting registration, location of bank and brokerage accounts, place of employment, driver's license and automobile registration, and payment of taxes. *Dyer v. Robinson*, 853 F. Supp. 169, 172 (D. Md. 1994); *see also Hilton v. Gossard*, 702 F. Supp. 3d 425, 429 (D.S.C. 2023). "The question of changing one's domicile is largely a matter of intent, and this fact must be determined in the light of all the evidence, in the circumstances, and the

3

reasonable inferences to be drawn therefrom." *Swift & Co. v. Licklider*, 7 F.2d 19, 21 (4th Cir. 1925).

Ms. Agyenim-Boateng currently resides in North Carolina and is married to plaintiff Daniel Agyenim-Boateng, as alleged in her complaint. She no longer owns property in Washington, her Washington voter registration is inactive, and her Washington nursing license expired in February 2025. Ms. Agyenim-Boateng has purchased property in North Carolina and she has obtained her North Carolina nursing license. *See* [DE 15] Ex. A-E. Ms. Agyenim-Boateng states that she has not registered to vote in North Carolina, that she can easily restore her nursing license once she returns to Washington, and that she has paid taxes in both North Carolina and Washington. [DE 21-1]. It is undisputed that Ms. Agyenim-Boateng's husband is now domiciled in North Carolina, and that plaintiff is jointly listed on the mortgage of the property they own in North Carolina. [DE 19-1] ¶ 4.

Ms. Agyenim-Boateng asserts that her residence in North Carolina is due to a temporary family health obligation, specifically to care for her aging parents, and that she intends to return to Washington when her family situation allows. *Id.* ¶ 6. But a "floating intention" to return to Washington is not sufficient to controvert the evidence that Ms. Agyenim-Boateng's domicile has changed to North Carolina. *Hall v. Nestman*, Civil Action No. 5:14-cv-00062, 2015 U.S. Dist. LEXIS 83728, at *14 n.6 (W.D. Va. June 29, 2015). In a supplemental declaration, Daniel Agyenim-Boateng states that Ms. Agyenim-Boateng has expressed her desire to return to Washington before September 2025 so that their children may resume schooling there and that in April 2025, Mr. Agyenim-Boateng received a message from Ms. Agyenim-Boateng that she had taken money from him to move away from North Carolina. [DE 24-1]. But, in the months since this document was filed, plaintiffs have presented no further evidence that Ms. Agyenim-Boating

4

has, in fact, returned to Washington. In sum, a preponderance of the evidence demonstrates that, despite her stated intention to return to Washington, Ms. Agyenim-Boateng's domicile is in North Carolina, and was so at the time relevant to determining whether the Court has diversity jurisdiction over this case. *See id.*, 2015 U.S. Dist. LEXIS 83728, at *9. The motion to remand is denied.

The Court next considers defendant's motion to compel arbitration. [DE 6]. Section 4 of the Federal Arbitration Act ("FAA") allows a party to an arbitration agreement to enforce that agreement by petitioning any district court for an order compelling arbitration. 9 U.S.C. § 4. Under § 4, arbitration will be compelled if (1) "the parties have entered into a valid agreement to arbitrate," and (2) "the dispute in question falls within the scope of the arbitration agreement." *Chorley Enterprises, Inc. v. Dickey's Barbecue Restaurants, Inc.*, 807 F.3d 553, 563 (4th Cir. 2015); *Muriithi v. Shuttle Exp., Inc.*, 712 F.3d 173, 179 (4th Cir. 2013). "The FAA reflects a liberal federal policy favoring arbitration agreements." *Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 500 (4th Cir. 2002) (quotations and citation omitted).

Plaintiffs activated their wireless service with defendant in July 2021, subject to defendant's 2021 terms and conditions. [DE 7-2] Sanchez Decl. ¶¶ 5-9. Defendant would not have activated plaintiffs' wireless service absent their agreement to defendant's terms and conditions. *Id.* ¶ 12. In April 2023, defendant notified plaintiffs of its updated terms and conditions. By using and paying for their service with defendant, plaintiffs agreed to defendant's updated terms and conditions. *Id.* ¶¶ 14-16; [DE 7-3] at 3. Defendant does not have any record of plaintiffs opting out of the arbitration agreement contained in the terms and conditions. *Id.* ¶ 13.

Defendant's terms and conditions contain an agreement to arbitrate, specifically to arbitrate any claims or disputes related in any way to or concerning the wireless agreement as well as

defendant's services, devices, and products. *See* [DE 7-3] at 4-7; [DE 7-5] at 7-10. The arbitration agreement states that arbitration will be governed by the America Arbitration Association's rules and that the arbitrator has the power to decide their own jurisdiction, including issues regarding the existence or scope of the arbitration agreement and whether any claim is subject to arbitration. *Id.*

"In the Fourth Circuit, a litigant can compel arbitration under the FAA if he can demonstrate (1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce, and (4) the failure, neglect or refusal of the [non-moving party] to arbitrate the dispute." *Adkins*, 303 F.3d at 500–01 (internal quotations and citation omitted).

Here, there is a dispute between the parties, and defendant has demonstrated in its briefing that the transaction implicates interstate commerce and that plaintiffs have declined arbitrate. Plaintiffs raise several arguments in opposition to the motion to compel arbitration. First, they argue that defendant has failed to produce a signed contract in which plaintiffs agreed to arbitrate, and this concerns the second inquiry under *Adkins*. But it is established that, while agreements to arbitrate must be in writing, "they need not be signed to be enforceable." *Krusch v. TAMKO Bldg. Prods., Inc.*, 34 F. Supp. 3d 584, 589 (M.D.N.C. 2014). Here, plaintiffs were provided with clear notice of the terms and conditions, the updates to the terms and conditions, and specifically that by using and paying for defendant's wireless service they would be assenting to the terms and conditions. Defendant has demonstrated that there is a valid agreement to arbitrate. Plaintiffs further contend that there is no clear and unmistakable delegation of arbitrability to the arbitrator. But plaintiffs have not argued that their claims are otherwise outside the arbitration provision, nor

6

do they contend that the arbitration provision is unconscionable. Accordingly, the Court determines that plaintiffs and defendant entered into an arbitration agreement which purports to cover this dispute.

Second, plaintiffs argue that the three-weeks of pre-suit negotiations demonstrate that defendant has waived its right to compel arbitration, relying on *Morgan v. Sundance*, 596 U.S. 411 (2022). In *Morgan*, the Supreme Court held that courts need not consider whether the other party has been prejudiced when determining whether a party has waived its right to compel arbitration. *Id.*, 596 U.S.at 419 ("prejudice is not a condition of finding that a party, by litigating too long, waived its right to stay litigation or compel arbitration under the FAA.").

Here, defendant has not waived its right to arbitrate by engaging in informal settlement negotiations with plaintiffs, as doing so did not amount to acting inconsistently with its right to arbitrate. *See Garcia v. Fuentes Rest. Mgmt. Servs. Inc.*, 141 F.4th 671, 679 (5th Cir. 2025); *Battle v. Microsoft Corp.*, Civil Action No. 23-cv-01822-LKG, 2024 U.S. Dist. LEXIS 192336, at *20 (D. Md. Oct. 23, 2024). Plaintiff also argues that arbitration has been sprung on plaintiffs as a surprise. But defendant filed its motion to compel arbitration within one week of its removal of the case to this Court. The Court discerns no surprise or dilatory tactics on behalf of defendant. Plaintiffs' argument that defendant has waived its right to arbitrate fails.

Third, plaintiffs argue that arbitration would deny plaintiffs of their chosen forum and the opportunity for full and fair relief. Plaintiffs offer no substantive argument which would demonstrate that the arbitration proceedings cannot provide them with, as is stated in the terms and conditions, "any relief that would be available in court . . .." [DE 7-5] at 9.

7

Case 5:25-cv-00183-BO-BM   Document 26   Filed 10/10/25   Page 7 of 8

In sum, and for those reasons outlined above and in defendant's briefing, defendant has demonstrated the requirements for compelling arbitration. The motion to compel arbitration is therefore granted.

## CONCLUSION

Accordingly, for the foregoing reasons, plaintiffs' motion to remand [DE 4] is DENIED. Defendant's motion to compel arbitration [DE 6] is GRANTED. This action is hereby STAYED during the pendency of the arbitration proceedings. The clerk is DIRECTED to remove the case from the active docket while the case is stayed. Defendant shall file status updates every ninety-days as to the status of the arbitration proceedings. Defendant shall further notify the Court at the conclusion of the arbitration proceedings, including whether any claims or issues remain for resolution in this case.

Plaintiffs' motion to request e-filing [DE 5] and motion for leave to use electronic equipment during oral argument [DE 10] are DENIED AS MOOT. Defendant's motion for leave to file sur-reply [DE 22] is GRANTED.

SO ORDERED, this _10_ day of October 2025.

_/s/ Terrence Boyle_
TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE